MERRITT, Circuit Judge,
dissenting.
The plaintiffs entered into an agreement with the union to give up their jobs, salaries and expectations of future retirement benefits in return for yearly early retirement benefits of approximately $20,000 for Anderson, $30,000 for Squier and $40,000 for Scohy — less than half their salaries. There is no showing of bad faith. They responded to the union’s offer made by its President, originating with its accountants and blessed as to legality by its counsel. The district court was correct to conclude that the Union, through its retirement plan, as well as the actions of its president and the advice of its counsel, manifested authority in the Board to offer the early retirement contracts to the plaintiffs. The Retirement Plan specifically provides that the Union “acting through its ... Board” shall have the right to modify the plan. Moreover, the Union’s constitution provides that the Board “shall decide all questions involving interpretation of the Constitution and By-Laws, between Conventions.” Both the Union President and the Union’s attorney, Gordon Gregory, assured the plaintiffs that there were no legal problems with the retirement plan.
The district court was also correct that the plaintiffs were reasonable in relying on such manifestations. Their beliefs that Board approval would bind the Union were reinforced by Board member Ronald War-field, who at the time was a member of the pension committee; by Union President MeConville, who presented the plan to them to begin with as a way to save the Union money and who assured them that the Board could bind the Union to such a plan; and by Gordon Gregory, who had been an attorney for the Union for 35 years, and whose opinion they sought and who repeatedly assured them that the *557 Board action would be sufficient to make the plan binding. President McConville and Attorney Gregory even testified that they thought the plaintiffs were reasonable in believing that Board approval could make the plan binding. It is true that the plaintiffs were made aware that there might be some legal challenge to the retirement plan, but that alone is not sufficient to make their reliance unreasonable in light of all the assurances they received, especially when the plan was not even their idea, but rather was presented to them as a way for the Union to save money. Indeed, the plaintiffs were praised for sacrificing their own jobs in order to save the Union money.
The Union argues that the plaintiffs cannot claim reasonable reliance on Attorney Gregory’s advice when Gregory advised them otherwise on January 4th, recommending that the Board rescind the vote. But Gregory’s advice on January 4th is irrelevant to the question of whether a contract had been created on December 7th. By that point the plaintiffs had already relied on the apparent authority of the President and the Board and the advice of counsel. Had the plaintiffs been the ones who sought to get out of the December 7th agreement while the Union sought to enforce it, the plaintiffs would likely have been bound.
The Union believes that the early retirement agreement violates Section 501 of the Labor Management Reporting and Disclosure Act (LMRDA), which makes it a breach of duty for a Union official to expend Union money in violation of the Union constitution, and which provides a cause of action for individual Union members when the Union’s constitution is so violated. 29 U.S.C.A. § 501 (2003). But Section 501 does not provide that a Union may itself persuade otherwise innocent Union officers to sign a contract and then use that provision as a defense to the contract that the Union has entered into. As the majority notes, there is no precedent for allowing a Union to use Section 501 in this manner.
Moreover, even if a Union’s officers had breached a Section 501 duty by entering into such a contract, that does not void the contract as illegal. Neither the language of the statute nor the case-law contemplates rendering the union contract void. The majority seems to admit this point, but downplays its significance. A contract should not be rendered void at the behest of the party that induced its formation at the expense of actors who lack culpability or any wrongful intent. If the Union members claim a breach of duty by the plaintiffs, that claim should be pursued in an action for damages in tort or restitution under the statute. Voiding the contract and leaving the plaintiffs out in the cold is too drastic a remedy and has no relation to any damages Union members may have suffered.
Furthermore, as I explained above, I do not believe the plaintiffs breached a duty to the Union members in the first place. Again, there was no showing of bad faith on their part, and the retirement plan was not their idea, but rather was the idea of the Union accountant, and was presented to them by the Union president as a way of saving the Union money. We should not now allow the Union to avoid the contract it drafted and asked them to sign, especially by means of a statutory provision that only provides a cause of action for third-party Union members. Doing so turns Section 501 into a one-sided escape route for Unions that Congress never intended.
For the aforementioned reasons, I respectfully DISSENT.